UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISRAEL VELASQUEZ-MARQUEZ, <br><br>  Petitioner, <br><br> v. <br><br> STEVEN SINCLAIR, <br><br>  Respondent. | CASE NO. C13-1093-JCC-MAT <br><br> REPORT AND RECOMMENDATION |

INTRODUCTION

Petitioner Israel Velasquez-Marquez proceeds *pro se* and *in forma pauperis* in this habeas corpus matter pursuant to 28 U.S.C. § 2254. He is in custody pursuant to a 2008 conviction by jury verdict for murder in the first degree and unlawful possession of a firearm in the first degree. (Dkt. 24, Ex. 1.) King County Superior Court sentenced petitioner to 360 months confinement and a term of community custody. (*Id*. and Ex. 2 at 1.) Petitioner raises three grounds for relief in his habeas petition. (Dkt. 15.) Respondent submitted an answer to the petition, along with relevant portions of the state court record, and argues for dismissal on the merits. (Dkts. 22 & 24.)

The Court has now considered the record relevant to the grounds raised in the petition. For the reasons discussed herein, it is recommended that petitioner's habeas petition be DENIED and this case DISMISSED.

## BACKGROUND

The Washington Court of Appeals described petitioner's case as follows:

> While working off-duty as security at Southcenter Mall, Tukwila Police Detective Karen Sotace learned that another officer was chasing six males from the scene of a shooting of someone whose name was Wayne Molio'o. As a result, Sotace arrested Israel Alacio Bobadilla and three other young men who were all Hispanic and dressed in a manner Sotace recognized as consistent with the "Suerno 13" gang. Sotace noticed blood drops on Bobadilla's pants. As Sotace spoke to Bobadilla, a man approached her and said that his name was Mike, that he had seen everything and that Bobadilla was the shooter. Sotace told Mike to stand to the side while she finished with Bobadilla, but Mike left. Sotace later learned that Mike was known to other officers in the area as "Crazy Mike."
>
> At the police station, Nora Mateo, who had been present when her cousin Molio'o was shot, identified Bobadilla as the shooter. When interviewed by detectives, Bobadilla denied shooting Molio'o, but admitted that he was present when another man who looked like him and was also named Israel shot Molio'o. Bobadilla explained that the shooting was the result of a dispute between rival gangs. He claimed that the other Israel had a mole near his right eye and came to the mall in a red car with a woman named Ashleyann in order to confront the other gang. Bobadilla went with police to Ashleyann's apartment and pointed out her red car. The police later returned to the apartment and found Israel Velasquez-Marquez fully clothed and asleep on a bed next to Ashleyann Tuilaepa. Velasquez-Marquez was wearing black gloves. Police later retrieved the gun used in the shooting from under the pillow Velasquez-Marquez had been using.
>
> The State charged Velasquez-Marquez with first degree murder with a firearm allegation and first degree unlawful possession of a firearm. Prior to trial, Velasquez-Marquez moved to admit evidence of Mike's statement that Bobadilla was the shooter as either an excited utterance or a present sense impression. The trial court determined that Velasquez-Marquez failed to establish a proper foundation for either hearsay exception and excluded the evidence.

Although the State originally listed Bobadilla as a witness, the prosecutor learned from Bobadilla's attorney during pre-trial proceedings that he had advised Bobadilla to invoke his Fifth Amendment rights and refuse to testify. As a result, the State did not call Bobadilla to testify at trial. The trial court denied Velasquez-Marquez's request for a missing witness instruction.

At trial, Tuilaepa testified that she drove her boyfriend Velasquez-Marquez to the mall in her red car. Tuilaepa admitted that she reported to police that when they arrived at the mall, Velasquez-Marquez got out of the car, took a gun from the trunk and put it in the front of his pants, and walked toward a bus stop. Tuilaepa also told police that Velasquez-Marquez ran back to the car with the gun in his hand, and then put the gun back in his pants and got into the car. Tuilaepa testified that she saw the gun under Velasquez-Marquez's pillow later.

(Dkt. 24, Ex. 3 at 1-3.)

Counsel for petitioner filed an appeal of the judgment and sentence. (*Id*., Ex. 4.) Counsel identified the same three assignments of error raised by petitioner in the current matter. (*Id*.) By order dated March 15, 2010, the Washington Court of Appeals affirmed petitioner's conviction. (*Id*., Ex. 3.) Through counsel, petitioner filed a petition for review in the Washington Supreme Court, raising the same arguments. (*Id*., Ex. 6.) The Supreme Court denied review without comment on August 5, 2010. (*Id*., Ex. 7.) The Court of Appeals issued its mandate on September 10, 2010. (*Id*., Ex. 8.) Petitioner did not file a collateral attack.[1]

## DISCUSSION

Petitioner raises three grounds for relief:

Ground one: The trial court denied petitioner's right to present a defense when it refused to allow "Crazy Mike's" hearsay identification of Bobadilla as the

---

[1] Petitioner filed this habeas petition in the Eastern District of Washington on April 22, 2011. (Dkt. 1.) While an Order transferring the petition to this Court was docketed in the Eastern District on April 27, 2011, that Order was not received by this Court. (*See* Dkts. 3, 5.) Following petitioner's inquiry in June 2013, the case was transferred as of June 24, 2013. (Dkts. 4 & 5.)

REPORT AND RECOMMENDATION
PAGE -3

shooter.

<u>Ground two</u>: The trial court denied petitioner's right to present a defense when it refused to give a proposed missing witness jury instruction.

<u>Ground Three</u>: The prosecutor committed misconduct during closing argument by expressing her opinion as to Bobadilla's veracity and petitioner's guilt.

(*See* Dkt. 1 at 4-8 and Dkt. 22 at 4.) Respondent concedes and the Court agrees that petitioner properly exhausted his grounds for relief. The Court, therefore, considers the merits of petitioner's claims.

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d)(2).

Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 412-13. The Supreme Court has made clear that a state court's decision may be overturned

only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

The Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398-1400 (2011). Also, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A.   <u>Ground One</u>

In his first ground for relief, petitioner argues he was denied the right to present a defense through the exclusion of evidence of "Crazy Mike's" identification of Bobadilla as the shooter. He maintains the evidence should have been admitted as either an excited utterance or a present sense impression.

The Washington Court of Appeals addressed this claim as follows:

> A criminal defendant has a constitutional right to present his defense with relevant evidence that is not otherwise inadmissible. Nonetheless, the admission or refusal of evidence is within the sound discretion of the trial court and will not be reversed in the absence of manifest abuse.
>
> Hearsay, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," is not admissible unless an exception applies. Under ER 803(a)(2) an excited utterance, an exception to the hearsay rule, is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The requirement of a starting event or condition is not determined solely by reference to the event itself because the proper focus is the event's effect on the declarant. Determining whether a statement qualifies as an excited utterance is a fact-specific inquiry.

Although the statements at issue were made shortly after the obviously starting event of a fatal shooting of a young man, nothing in the record indicates that Mike was under any stress of excitement caused by the shooting. Detective Sotace described Mike as "pretty calm," and could not remember any other details about his tone of voice or demeanor. Under these circumstances, there was no abuse of discretion in the trial court's decision that Velasquez-Marquez had not presented a sufficient foundation for admission of the statement as an excited utterance.

ER 803(a)(1) provides an exception to the hearsay rule for present sense impression, which is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The trial court determined that Mike's statement to Detective Sotace did not qualify as a present sense impression because he made the statement twenty to thirty minutes after the shooting rather than "immediately thereafter." Velasquez-Marquez's argument based on an opinion from another state affirming a trial court's admission of evidence as a present sense impression under different facts does not persuade us that the trial court abused its discretion here.

(Dkt. 24, Ex. 3 at 3-5, footnotes omitted.)

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal citations omitted). The right to present a defense is, however, not absolute. *Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996). "[T]he accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Accordingly, "'[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Egelhoff*, 518 U.S. at 42 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

REPORT AND RECOMMENDATION
PAGE -6

01   The Constitution affords state courts broad latitude in regard to the exclusion of
02 evidence from criminal trials. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). To
03 support a constitutional violation, a state court's decision to exclude evidence "must be so
04 prejudicial as to jeopardize the defendant's due process rights." *Tinsley v. Borg*, 895 F.2d 520,
05 530 (9th Cir. 1990).

06   Pursuant to Washington Evidence Rule (ER) 802, hearsay is inadmissible absent an
07 applicable exception, such as a present sense impression or excited utterance. A present sense
08 impression is "[a] statement describing or explaining an event or condition made while the
09 declarant was perceiving the event or condition, or immediately thereafter." ER 803(a)(1).
10 An excited utterance is "[a] statement relating to a startling event or condition made while the
11 declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2).

12   Under Washington law, the exceptions for a present sense impression or excited
13 utterance are interpreted "in a sufficiently restrictive manner as to prevent their application
14 where the factors guaranteeing trustworthiness are not present." *State v. Hieb*, 39 Wn. App.
15 273, 278, 693 P.2d 145 (1984), *reversed on other grounds*, 107 Wn.2d 97, 727 P.2d 239 (1986).
16 "The admissibility of a statement of a present sense impression is based upon the assumption
17 that its contemporaneous nature precludes misrepresentation or conscious fabrication by the
18 declarant." *Id*. (citing source omitted). With consideration of the contemporaneous nature of
19 a present sense impression, the time limit for such statements is "considerably shorter" than the
20 time limit for an excited utterance. 5C Karl B. Teglund, *Washington Practice: Evidence Law*
21 *and Practice* § 803.4 at 11 (5th Ed. 2007). "Excited utterances are spontaneous statements
22 made while under the influence of external physical shock before the declarant has time to calm

01   down enough to make a calculated statement based on self-interest." *State v. Hardy*, 133

02   Wn.2d 701, 714, 946 P.2d 1175 (1997) (cited sources omitted).  With an excited utterance, the

03   crucial question is "whether the statement was made while the declarant was still under the

04   influence of the event to the extent that his statement could not be the result of fabrication,

05   intervening actions, or the exercise of choice or judgment."  *State v. Thomas*, 150 Wn.2d 821,

06   853-54, 83 P.3d 970 (2004) (quoting *Johnston v. Ohls*, 76 Wn.2d 398, 406, 457 P.2d 194

07   (1969)).

08          In this case, the trial court first addressed the "Crazy Mike" statement during a pretrial

09   hearing.  Detective Sotace testified that Crazy Mike made the statement "[a]pproximately

10   twenty, thirty minutes[]" after the shooting and described him as "[p]retty calm[,]" adding:  "It

11   wasn't like someone running up to me, 'Hey, that's the guy, that's the guy,' it wasn't really like

12   that."   (Dkt. 25, Ex. 10 at 91-93; *accord id*., Ex. 11 at 44-45 (describing timing).)

13   Considering the passage of time between the shooting and the statement, and the absence of

14   evidence the declarant was "under the stress of excitement" caused by the shooting at the time

15   he made the statement, the trial judge made a preliminary ruling that the statement did not fall

16   within either the present sense impression or excited utterance exceptions to the hearsay rule.

17   (*Id*., Ex. 14 at 32-33; *see also id*., Ex. 13 at 102-11.)   However, she indicated she would allow

18   counsel for the defense to lay further foundation for the admissibility of the evidence through

19   testimony from Detective Sotace.   (*Id*., Ex. 14 at 32-33.)

20          At trial, counsel for petitioner again questioned Detective Sotace, but obtained no

21   further information as to foundation, such as the timing of the statement in relation to the

22   shooting or the demeanor of the declarant.   (*Id*., Ex. 16 at 156-60.)   The trial judge,

accordingly, found an absence of foundation to submit the statement as either a present sense impression or excited utterance. (*Id*. at 160-73 and Ex. 24 at 53-54.)

Where a hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the exclusion of that statement may rise to the level of a due process violation. *Chambers*, 410 U.S. at 302. In this case, petitioner fails to demonstrate the trial court abused its discretion in finding the statement by Crazy Mike inadmissible. Instead, the court reasonably based its decision on the absence of evidence the statement was made contemporaneous to the shooting or while the declarant was under the stress of excitement caused by that event. The court, therefore, reasonably concluded petitioner failed to present a sufficient foundation for the admission of the otherwise inadmissible hearsay evidence.[2]

Petitioner further fails to demonstrate that the exclusion of the statement could be deemed so prejudicial as to jeopardize his constitutional rights. As respondent observes, the jury heard evidence pointing to Bobadilla as the shooter, including testimony from another witness, Nora Mateo, who identified Bobadilla as the shooter both at the show-up procedure at the police station and ten days later in a photographic montage. (Dkt. 24, Ex. 17 at 34-40, 46-49; *see also id*., Ex. 24 at 114-16, 133-36 (closing arguments regarding Mateo's identification of Bobadilla).) However, substantial evidence nonetheless supported petitioner's conviction, including, *inter alia*, evidence showing he was apprehended while in possession of the murder weapon, and testimony from his girlfriend and evidence from his

---

[2] Petitioner also contends the state court "incorrectly based [its] decision only on state law when applying federal law for this issue to the facts." (Dkt. 15 at 5.) However, the state court properly considered whether or not petitioner had "a constitutional right to present his defense with relevant evidence that is not otherwise inadmissible." (Dkt. 24, Ex. 3 at 3 (citing, *inter alia*, the Sixth and Fourteenth Amendments to the United States Constitution).)

cousin supporting his identification as the shooter.  (*Id*., Ex. 17 at 119-26, 132-34, 139-40, 154-57, Ex. 18 at 14-16, 26-27, 35-37, and Ex. 19 at 189-91).)

Petitioner, in sum, fails to establish that the state court's decision was contrary to or an unreasonable application of clearly established federal law.  Accordingly, his first ground for relief should be denied.

B.     Ground Two

In his second ground for relief, petitioner argues the trial court denied his right to present a defense when it refused to give his proposed "missing witness" instruction as to Bobadilla.  He asserts that the only inference to be drawn from Bobadilla's failure to appear as a witness was that he was no longer willing to testify consistent with the State's theory, stresses that Bobadilla was "peculiarly available to the State[,]" and avers that, in the refusal of his proposed instruction, he was denied his ability to argue his own theory of the case.  (Dkt. 15 at 6-7.)

The Washington Court of Appeals explained its rejection of this claim as follows:

> When a party fails, without explanation, to call a witness it would naturally call if the witness's testimony would be favorable, the "missing witness" doctrine permits an inference that the uncalled witness's testimony would have been unfavorable.  The doctrine does not permit the inference when (1)  the witness is not peculiarly available to the party failing to call the witness; (2) the witness's testimony is unimportant or cumulative; or (3) the circumstances do not establish, as a matter of reasonable probability, that the party would not knowingly fail to call the witness in question unless the witness's testimony would be damaging.  If a witness's absence can be explained or if "some privilege applies so that the witness's testimony is protected," a missing witness inference is not permitted.
>
> We review a trial court's refusal to give a requested instruction for abuse of discretion.

> The trial court denied the defense request for a missing witness instruction, in part, because the circumstances indicated that the State's failure to call Bobadilla was not based on the nature of Bobadilla's testimony but on his expected invocation of his Fifth Amendment privilege. Because the State satisfactorily explained Bobadilla's absence, the trial court did not abuse its discretion in refusing to give a missing witness instruction.

(Dkt. 24, Ex. 3 at 5-6, footnotes omitted.) As with the first ground for relief, petitioner fails to demonstrate that this decision was contrary to or an unreasonable application of clearly established federal law.

A claim that a jury instruction was incorrect under state law is not a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). With challenges to jury instructions, the Court's "review is limited to determining whether an allegedly defective jury instruction 'so infected the entire trial that the resulting conviction violates due process.'" *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir. 1992) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). In making this assessment, the instruction "'may not be judged in artificial isolation[;]' [it] must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). *See also Duckett v. Godinez*, 67 F.3d 734, 745-46 (9th Cir. 1995) (the existence of a constitutional violation depends on the evidence in the case and the jury instructions as a whole).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). With the failure to give an instruction, the petitioner's burden is "especially heavy" because "[a]n omission, or an incomplete instruction is less likely

to be prejudicial than a misstatement of the law." *Id*. at 155; *accord Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997); *Walker v. Endell*, 850 F.2d 470, 475 (9th Cir. 1988).

Petitioner's second ground for relief appears to present a challenge based on state law. As stated above, a challenge to a jury instruction under state law is not a basis for habeas relief. *Estelle*, 502 U.S. at 71-72. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* 67-68. *Cf. Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief.") (citing *Estelle*, 502 U.S. 62). Petitioner may obtain relief only by showing a violation of clearly established federal law. *See* 28 U.S.C. § 2254(a) (federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States.") Therefore, to the extent this ground for relief targets a perceived error of state law, petitioner identifies no federal constitutional violation and this ground for relief is subject to dismissal.

In any event, petitioner fails to support the existence of any error or violation of his rights. Bobadilla's anticipated absence based on his intention to invoke his right against self-incrimination on the advice of counsel was discussed during pre-trial proceedings. (Dkt. 24, Ex. 12 at 91-92, and Ex. 13 at 113-14.) Counsel for petitioner conceded: ". . . I believe [Bobadilla's counsel] when he says that his client is going to take the Fifth." (*Id*., Ex. 13 at 113-14.) Counsel for petitioner nonetheless requested the following missing witness instruction:

> If a party does not produce the testimony of a witness who is within the control of or peculiarly available to that party and as a matter of reasonable probability it appears naturally in the interest of the party to produce the witness, and if the party fails to satisfactorily explain why it has not called the witness, you may infer that the testimony that the witness would have given would have been unfavorable to the party, if you believe such inference is warranted under all the circumstances of the case.
>
> Israel Alacia-Bobadilla is a witness who is within the control of or peculiarly available to the plaintiff, State of Washington.

(Dkt. 24, Ex. 3 at 6, n. 11.)   The trial court rejected the proposed instruction, finding it was "not entirely accurate" to state that Bobadilla was peculiarly available to the State given that the "State brought him here and had him available to both of you for purposes of calling him into the courtroom[,]" noting the parties were "in mutual agreement" as to a sufficient record that Bobadilla's counsel had instructed him to not take the stand, and that circumstances did not establish the State would not knowingly fail to call Bobadilla unless his testimony would be damaging, explaining:   "everything there that has been presented to me is just the opposite of that; that Mr. Bobadilla's testimony would be extremely helpful to the State."   (*Id.*, Ex. 24 at 31-32.)

Petitioner's arguments in support of his second ground for relief entirely ignore the fact that Bobadilla's absence as a witness was explained.   Given the explanation for his absence – his intention to invoke his Fifth Amendment right against self-incrimination – an unfavorable inference and missing witness instruction was not permissible.   *State v. Blair*, 117 Wn.2d 479, 489, 816 P.2d 718 (1991) ("If a witness's absence can be satisfactorily explained, no inference is permitted."; "If . . . some privilege applies so that the witness's testimony is protected, then the inference is not proper.")   Nor, as the trial judge noted, is there any basis for concluding

REPORT AND RECOMMENDATION
PAGE -13

Bobadilla's testimony would have been damaging to the State. *See State v. Davis*, 73 Wn.2d 271, 276-77, 438 P.2d 185 (1968) ("For a witness to be 'available' to one party to an action, there must have been such a community of interest between the party and the witness, . . . as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging."), *overruled in part on other grounds by State v. Abdulle*, 174 Wn. 2d 411, 420, 275 P.2d 1113 (2012). Instead, as respondent observes, the record – including the fact that Bobadilla identified petitioner as the shooter and led the police to Bobadilla and the murder weapon – supports the conclusion that Bobadilla's testimony would have incriminated petitioner. (Dkt. 24, Ex. 12 at 14-36.)

Petitioner, in sum, fails to demonstrate any basis for a missing witness instruction. Nor does petitioner provide support for a conclusion that the omission of such an instruction prevented him from presenting his defense or otherwise violated his federal constitutional rights. As such, his second ground for relief should be denied.

C.   Ground Three

Petitioner, in his third ground for relief, argues the prosecutor violated his right to due process and a fair trial by expressing her opinion regarding Bobadilla's veracity and his guilt. The Court of Appeals described the challenged statement of the prosecutor and addressed this claim as follows:

> By claiming prosecutorial misconduct, Velasquez-Marquez bears the burden of establishing that the prosecutor's conduct was both improper and prejudicial.
>
> It is misconduct for a prosecutor to state a personal belief as to the

credibility of a witness. Prejudicial error will not be found unless it is "'clear and unmistakable'" that counsel is expressing a personal opinion and not arguing an inference from the evidence. Even improper remarks are not grounds for reversal if they respond to a defense argument and are not so prejudicial as to be incurable by an instruction. Failure to object to a prosecutor's improper remark constitutes waiver unless the remark is deemed to be so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

Here, in closing argument, defense counsel argued that Bobadilla was the shooter, as originally identified by Nora Mateo, and that the "State is trying to spin this so that you can ignore Nora and just go with what amounts to circumstantial evidence." In her rebuttal argument, the prosecutor stated: "And why would the State want to charge this man instead of Mr. Bobadilla, if the evidence pointed to Mr. Bobadilla? The evidence does not point to Mr. Bobadilla. Each and every piece points to the defendant." Velasquez-Marquez did not object during the argument but moved for a mistrial at the conclusion of the State's rebuttal based on these statements.

First, Velasquez-Marquez did not preserve his claim of error by objecting and he does not demonstrate enduring and resulting prejudice that could not have been addressed by a curative instruction.

Second, even so, the prosecutor's argument is not a clear and unmistakable statement of personal belief, as was the case in State v. Sargent[, 40 Wn. App. 340, 698 P.2d 598 (1985).]. There the prosecutor stated, "I believe Jerry Lee Brown. I believe him . . . ." [Id. at 343 (emphasis omitted).] Here, the prosecutor was drawing a permissible inference from the evidence as to why the jury should believe the witnesses who testified that Velasquez-Marquez, rather than Bobadilla, was the shooter, and reject the defense theory that the State was knowingly prosecuting Velasquez-Marquez in spite of evidence that Bobadilla was the shooter. Velasquez-Marquez has not met his burden to establish prosecutorial misconduct.

(Dkt. 24, Ex. 3 at 7-8.) Again, petitioner fails to demonstrate that this decision was contrary to or an unreasonable application of clearly established federal law.

In analyzing a claim of prosecutorial misconduct, the appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642

REPORT AND RECOMMENDATION
PAGE -15

01  (1974)).  *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process

02  analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the

03  culpability of the prosecutor").  Improper argument does not, per se, violate a defendant's

04  constitutional rights."  *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).  "[I]t 'is not

05  enough that the prosecutors' remarks were undesirable or even universally condemned.'"

06  *Darden*, 477 U.S. at 181 (quoted source omitted).  The question is whether it can be said the

07  "prosecutors' comments 'so infected the trial with unfairness as to make the resulting

08  conviction a denial of due process.'"  *Id*. (quoting *Donnelly*, 416 U.S. at 643).  In assessing

09  the claim, the Court must examine the entire proceedings and place the prosecutor's statements

10  in context.  *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).  *See also Ortiz-Sandoval v.

11  Gomez*, 81 F.3d 891, 898 (9th Cir. 1996) ("The arguments of counsel are generally accorded

12  less weight by the jury than the court's instructions and must be judged in the context of the

13  entire argument and the instructions.") (citing *Boyde v. California*, 494 U.S. 370, 384 (1989)).

14  In this case, counsel for petitioner, in his closing argument, highlighted evidence

15  pointing to Bobadilla's involvement in the shooting, including the fact that Mateo twice

16  identified Bobadilla as the shooter, the difference in appearance between Bobadilla and

17  petitioner, that Bobadilla and other witnesses did not testify, conflicting testimony from a

18  witness as to whether or not Bobadilla was holding a bottle at the time of the shooting, and the

19  blood found on Bobadilla's clothing.  (Dkt. 24, Ex. 24 at 133-44.)  He argued:  ". . . the proof

20  is not here, and we have evidence that is another guy did it; somebody not wearing that shirt, but

21  somebody wearing a white short that Bobadilla was wearing, and maybe sunglasses, none of

22  which apply to my client."  (*Id*. at 146-47.)  Counsel also suggested that Bobadilla, among

others, could have put the gun in the bedroom where petitioner was found. (*Id*. at 147-48 ("All of them were at the shooting and Bobadilla is the only one who didn't show up."))

The prosecutor, in rebuttal, pointed to the evidence incriminating petitioner and responded to the criticisms of the State's case as raised by petitioner's counsel. (*Id*. at 148-53.) She thereafter stated: "And why would the State want to charge this man instead of Mr. Bobadilla, if the evidence pointed to Mr. Bobadilla? The evidence does not point to Mr. Bobadilla. Each and every piece points to the defendant." (*Id*. at 153.)

Petitioner fails to demonstrate that the prosecutor's statement was an expression of opinion or otherwise improper. "As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." *United States v. Molina*, 934 F.2d 1440, 1444-45 (9th Cir. 1991). "Such prosecutorial vouching, which consists of either placing the prestige of the government behind the witnesses through personal assurances of their veracity or suggesting that information not presented to the jury supports the witnesses' testimony, is improper." *Id*. at 1445. At the same time, however, "the prosecution must have reasonable latitude to fashion closing arguments[,]" and "[i]nherent in this latitude is the freedom to argue reasonable inferences based on the evidence." *Id*. "In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying." *Id*. (citations omitted).

The prosecutor's statement regarding Bobadilla is not reasonably construed as an expression of an opinion. Instead, the prosecutor properly replied to the arguments raised by counsel for petitioner in closing and raised a reasonable inference based on the evidence. Petitioner fails to provide any support for the assertion that the prosecutor's statement was an

REPORT AND RECOMMENDATION
PAGE -17

expression of opinion, or that the statement could be said to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. For this reason, the Court recommends petitioner's third ground for relief be denied.

D. <u>Certificate of Appealability</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that petitioner is not entitled to a COA with respect to his claims.

## CONCLUSION

The Court recommends the habeas petition be DENIED, and this case DISMISSED. An evidentiary hearing is not required as the record conclusively shows that petitioner is not entitled to relief. A proposed Order accompanies this Report and Recommendation.

DATED this <u>19th</u> day of December, 2013.

/s/ Mary Alice Theiler
Mary Alice Theiler
Chief United States Magistrate Judge